IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GILBERT OLDFIELD,

    Plaintiff,

vs.                                                                               Civ. No. 16-0023 MCA/KBM

NIMA BABADI, individually and in his
official capacity as San Juan County Sheriff's Office
Deputy, and SAN JUAN COUNTY
SHERIFF'S OFFICE,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This case comes before the Court upon Defendants' Motion for Summary Judgment [Doc. 10]. The Court has considered the written submissions of the parties, the record in this case and the pertinent law, and is otherwise fully advised.

**Summary Judgment Standards**

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[a] party may move for summary judgment, identifying each claim . . . on which summary judgment is sought."

As our Court of Appeals has succinctly stated:

> Summary judgment is appropriate only if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law. A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented.

1

*Adamson v. Multi Community Diversified Serv., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). The Court will treat Plaintiff's verified complaint as an affidavit to the extent it satisfies Fed. Civ. P. Rule 56(c). *Dawson v. Audet*, 636 Fed. App'x 753, 756 n.2 (10th Cir. 2016). The Court has disregarded averments in the complaint that are mere statements of belief or that otherwise are not based on personal knowledge. *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006).

**Legal Standards Applicable to a Dispositive Motion Based on Qualified Immunity**

> Resolution of a dispositive motion based on qualified immunity involves a two pronged inquiry. "First, a court must decide whether the facts a plaintiff has alleged or shown make out a violation of a constitutional right." "Second, . . . the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." "With regard to this second [prong], the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances presented." A reviewing court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (citations omitted).

**Background**

The record, viewed in the light most favorable to Plaintiff, would permit a reasonable jury to find as follows:

On May 20, 2014, Plaintiff was living in a mobile home located at 100 CR 3950, Farmington New Mexico. The mobile home belonged to Plaintiff's aunt, Beverly Swan.

Plaintiff's son, Austin Oldfield, had lived with Plaintiff and Swan, but had moved out a few weeks previously.

Plaintiff possessed a "registry identification card" issued by the New Mexico Department of Health ("NMDH"), entitling Plaintiff to possess medical marijuana for personal use. Plaintiff's registry identification card gave Plaintiff's address as 4200 Terrace, Farmington. NMDH issued Plaintiff's registry identification card in April 2013 and renewed it in April 2014. In April 2014, Plaintiff applied for a personal production license ("PPL"). NMDH rejected his application. In June 2014, Plaintiff resubmitted his application, which NMDH again rejected. Later on in June 2014, Plaintiff submitted a third application, which NMDH approved on July 17, 2014.

Prior to obtaining a PPL, Plaintiff had begun growing marijuana plants in the backyard of 100 CR 3950. On May 20, 2014, these plants were observed in plain view by San Juan County Deputy Sheriff Dan Becker in the course of an attempt to serve a subpoena on Austin Oldfield.

Defendant learned of Deputy Becker's discovery of the marijuana plants the next day, May 21, 2014. At the time, Defendant was an employee of San Juan County Sheriff's Department, assigned to the Region II Narcotics Task Force. Defendant looked at photographs of the plants taken by Deputy Becker and determined that the plants were marijuana plants. Defendant and a colleague drove out to the Swan residence. They observed a vehicle in the driveway. They ran the license plate and determined that the vehicle was registered to Gilbert Oldfield, 4200 Terrace, Farmington. Defendant checked

property and utility records for 100 CR 3950, which showed that the property and utilities at 100 CR 3950 were listed in Swan's name.

Defendant was aware that New Mexico law authorizes the cultivation of medical marijuana under specified conditions. Agent Sanchez and Defendant contacted NMDH to determine whether a PPL had been issued to anyone at the 100 CR 3950 address. Agent Sanchez and Defendant were told that no PPL was associated with the 100 CR 3950 address and that neither Swan nor Austin Oldfield had been issued a medical marijuana card. Defendant swore out an affidavit in support of a search warrant, incorporating Deputy Becker's estimate that there were 40 to 50 plants. Relying on the information provided by NMDH, Defendant averred that "nobody in the house has a Marijuana grow permit, and also there was nobody registered in that address to possess a medical marijuana card." The affidavit was reviewed and approved by a district judge.

Defendant and other agents executed the warrant. In the course of the search the agents seized 43 marijuana seedlings. Swan arrived home as the search was proceeding. Swan told Defendant that the owner of the marijuana plants was her nephew, Plaintiff Gilbert Oldfield, who lived with her. She told Defendant that Plaintiff had told her that he had a medical marijuana card and a grower's license. Relying on the evidence collected during the search, Swan's statements, and the information provided by NMDH, Defendant swore out an affidavit in support of a warrant for Plaintiff's arrest on state law charges of distribution of marijuana, possession of a controlled substance, and possession of drug paraphernalia. This second affidavit was reviewed and approved by a magistrate judge. Plaintiff subsequently was arrested and charged with possession of a controlled substance,

distribution of marijuana, and possession of drug paraphernalia.  Plaintiff entered a conditional plea of guilty to a misdemeanor possession charge.  Plaintiff appealed to the District Court, which dismissed the misdemeanor charge.

**Discussion**

  The Court understands Plaintiff to be claiming that Defendant searched his home, obtained an arrest warrant, and caused Plaintiff to be charged with various state-law drug offenses, all without probable cause in violation of his Fourth Amendment rights.

  Marijuana is a controlled substance under New Mexico law, NMSA 1978, § 30-31-6(C)(10), and it is unlawful to possess it without a valid prescription or order of a practitioner.  NMSA 1978, § 30-31-23(A).  The Lynn and Erin Compassionate Use Act, NMSA 1978, §§ 26-2B-1, *et seq.* ("the Act"), and implementing regulations, NMAC tit. 7, ch. 34 (2010), provide a limited exception to New Mexico's general proscription of the possession of marijuana.  Specifically, New Mexico law provided in May 2014 that "[n]o . . . qualified patient licensed as a producer . . . shall be subject to arrest, prosecution or penalty, in a[ny] manner for the production, possession, distribution or dispensation of cannabis in accordance with this rule and the act."  NMAC 7.34.4.17(A) ("Exemption from State Criminal and Civil Penalties for the Medical Use of Cannabis") (2010).  With respect to cultivation, the regulations authorized the issuance of a PPL to "[a] qualified patient who shall possess no more than an *adequate supply* of cannabis for the qualified patient's personal use only. . . ." NMAC 7.34.4.8(A) (2010) (emphasis added).  The regulations provided that "[a]n adequate supply shall not exceed six (6) ounces of useable cannabis, and with a personal production license only, four (4) mature plants and twelve

5

(12) seedlings. . . ." NMAC 7.34.4.7(D) (2010).  The number of plants observed by Deputy Becker was well in excess of these limits, a fact sufficient to give rise to probable cause that the plants were not being grown "in accordance with the rule and the act," thereby taking Plaintiff out of the safe harbor provided by NMAC 7.34.4.17(A).

Plaintiff's claim that Defendant falsely represented that "nobody in the house has a Marijuana grow permit" is not supported by the record.  The record includes a photocopy of a PPL issued to Plaintiff for the 100 CR 3950 address,[1] with an expiration date of April 29, 2015, the same expiration date set out on Plaintiff's registry identification card. [Doc. 1-2 at 11].  The PPL does not reflect the date it was issued.  Plaintiff apparently would have the Court infer that because his PPL and registry identification card have the same expiration date, they also must have been issued at the same time, and because these documents are issued on an annual basis, NMAC 7.34.3.10(B); NMAC 7.34.4.8(K)(2) (2010), his PPL would have been issued in April 2014, and would have been effective on May 21, 2014.  These inferences are not supported by the law or the record. The medical marijuana regulations in effect at the time provided that "[a] qualified patient's personal production license shall expire annually *at the end of their enrollment in the NM medical cannabis program*."  NMAC 7.34.4.8(K)(2) (emphasis added).  This regulation anticipates the untoward scenario in which a qualified patient's registry identification card expires (ending the patient's right to possess and use marijuana), yet his right to produce marijuana (which he no longer can possess or use) continues under a later-acquired PPL.

---

[1] By regulation, production pursuit to a PPL could take place only at "one single location, which shall be either the patient's primary residence, or other property owned by the patient."  NMAC 7.34.4.9(B) (2010).

6

NMAC 7.34.4.8(K)(2) forecloses this scenario by insuring that a PPL, *including one issued after the patient's registry identification card was issued*, expires on the same date that the patient's registry identification card expires. In view of NMAC 7.34.4.8(K)(2), a PPL issued to Plaintiff on July 17, 2014 would have had the same April 29, 2015 expiration date as his then current registry identification card. This is precisely what is shown by two letters from Andrea Sundberg, the Program Coordinator of NMDH's Medical Cannabis Program. [Docs. 10-5; 10-6] There is absolutely no inconsistency between the April 29, 2015 expiration date given on Plaintiff's PPL and the time line provided by NMDH showing that Plaintiff did not obtain a PPL until July 17, 2014—after the events giving rise to his claim. Plaintiff has not come forward with any evidence rebutting Defendant's showing that Plaintiff first obtained a PPL in July 2014. Plaintiff's suggestion of some conspiracy between Defendants and NMDH [Doc. 11 at 3] is rank speculation. On the record before the Court, no reasonable jury could find it more likely than not that Plaintiff possessed a PPL as of May 21, 2014.

    To summarize, Plaintiff has not shown that he had a PPL as of May 21, 2014. Moreover, even if Plaintiff had possessed a valid PPL, the number of marijuana plants Plaintiff was cultivating significantly exceeded the number authorized by the Act and implementing regulations. The facts on which Defendant relied in preparing the first affidavit unquestionably established probable cause that someone was growing marijuana at 100 CR 3950 in violation of New Mexico law. The evidence seized in the course of the search, together with Swan's statements, unquestionably established probable cause that Plaintiff was the person unlawfully cultivating the marijuana. In short, no reasonable jury

could find that the search of Plaintiff's home, his arrest, or his subsequent prosecution was not supported by probable cause. Because the absence of probable cause is an element of Plaintiff's federal claims, *Puller v. Baca*, 781 F.3d 1190, 1200 (10th Cir. 2015) (holding that affidavit establishing probable cause defeats claims for false arrest, malicious prosecution and substantive due process); *Felders v. Malcom*, 755 F.3d 870, 879 (10th Cir. 2014) (quoting *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012)) ("First, we ask whether the officers had probable cause [to search the plaintiff's property]."), Plaintiff's federal claims necessarily fail.

Due to the absence of a federal constitutional violation by Defendant Babadi, Plaintiff's § 1983 claims against Defendant in his official capacity and Defendant's employing municipality necessarily fail. *Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009) ("A county or sheriff in his official capacity cannot be held 'liable for constitutional violations when there was no underlying constitutional violation by any of its officers.'").

"When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998) (citing 28 U.S.C. § 1367(c)(3)). Having dismissed Plaintiff's federal claims, the Court declines to exercise jurisdiction over Plaintiff's remaining state-law claims. This case will be remanded to state court.

**WHEREFORE, IT HEREBY IS ORDERED** that Plaintiff's claims brought pursuant to 42 U.S.C. § 1983, are **dismissed with prejudice**;

**IT FURTHER IS ORDERED** that this case is **remanded** to the Eleventh Judicial District Court, San Juan County, New Mexico.

So ordered this 17th day of October, 2016.

_____
M. CHRISTINA ARMIJO
Chief United States District Judge